# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

DAVID M. MARKS,

        Plaintiff,

v.                                                  Case No. 09-CV-1159

HOUSTON CASUALTY COMPANY and
BEDFORD UNDERWRITERS, LTD,

        Defendants.

_____

## ORDER

On December 18, 2009, the defendant Houston Casualty Company ("Houston Casualty"), a Texas corporate citizen, removed this case from Milwaukee County Circuit Court to this court on the theory that the suit was between citizens of different states and that the amount in controversy exceeded $75,000. (Docket #1). Less than a month later, the plaintiff, David M. Marks ("Marks"), a citizen of Wisconsin, filed a motion to remand the case back to the state court, arguing that the second defendant, Bedford Underwriters, Ltd. ("Bedford"), as a Wisconsin company, defeated diversity jurisdiction, necessitating that the case be remanded. (Docket #5). Houston Casualty argues, however, that remanding the case is improper because the plaintiff fraudulently joined Bedford as a party to this suit to prevent the case from being successfully removed to this court. With the issue fully briefed, the court is prepared to make a ruling on the plaintiff's motion.

## BACKGROUND

A brief discussion of the facts propelling the current motion is appropriate. Houston Casualty issued a "Professional Liability Errors & Omissions Insurance Policy" to the plaintiff providing liability and defense cost coverage with a million dollar limit for a policy period of October 28, 2008, to October 28, 2009, for potential litigation resulting from Marks' performance as the trustee of two trusts. The policy notes that the insurance contract is with a "surplus lines" insurer, "an unlicensed carrier operating without a certificate of authority to do business in Wisconsin, but nonetheless permitted to do so (generally because there are no licensed carriers in the state offering coverage for a particular type of risk) if certain conditions are met." *Combined Investigative Services, Inc. v. Scottsdale Ins. Co.*, 165 Wis. 2d 262, 266 (Ct. App. 1991). The contract also lists Bedford as the "Wisconsin Surplus Lines Agent." After Houston Casualty issued the insurance policy to Marks, the plaintiff was sued in six different lawsuits in five different states regarding his role as a chairman of a company, a position Marks alleges he obtained because of his role as a trustee. In late July of 2009, Marks notified Houston Casualty regarding the lawsuits and requested defense and indemnity coverage pursuant to what the plaintiff thinks he is entitled to under the insurance contract. While Houston Casualty acknowledged that they had received Marks' claim letters, the insurer did not formally deny coverage until November 4, 2009. However, before coverage was

denied, Marks sued Houston Casualty in Milwaukee County Circuit Court on October 29, 2009. Marks' October lawsuit did not include Bedford as a party.

A little over two weeks passed, and Houston Casualty removed the case from state court to this district.[1] (Case No. 09-CV-1081, Docket #1). The next day, on November 17, 2009, the plaintiff provided the court with a notice of voluntary dismissal of its complaint. (Case No. 09-CV-1081, Docket #3). That same day, Marks filed a new complaint in state court against Houston Casualty, and the plaintiff opted to add Bedford as a defendant in the action. Marks alleges that Bedford is liable because, under Wis. Stat. § 618.44, if an insurance policy is issued in violation of the Wisconsin law, the policy is still enforceable against the insurer or against "any person who assisted in the procurement of the contract." Houston Casualty has removed the second lawsuit to this court, and Marks has moved to remand the case to state court. The court will grant the plaintiff's motion.

## DISCUSSION

A defendant is allowed to remove a case filed in state court if the federal court would have had original jurisdiction to hear the case when the plaintiff originally filed it. 28 U.S.C. § 1441(a). "The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).

---

[1] Upon removal, the first lawsuit was assigned to Chief Judge Charles Clevert and assigned Case Number 09-CV-1081.

-3-

Here, Houston Casualty relies on original federal diversity jurisdiction, provided by 28 U.S.C. § 1332(a), as its basis for removal. Diversity jurisdiction requires, in part, that the plaintiffs and defendants be completely diverse– that is, no plaintiff can be a citizen of the same state as any defendant. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 71 (7th Cir. 1992)(citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806)). In this case, because Marks and Bedford Underwriters are both Wisconsin citizens, it appears at first glance that complete diversity does not exist in this case and that the court does not have removal jurisdiction over the case. At the same time, Houston Casualty claims the court must disregard Bedford's citizenship because the plaintiff fraudulently joined Bedford in this litigation.

Under the fraudulent joinder doctrine, a plaintiff cannot avoid federal diversity jurisdiction by suing a non-diverse defendant simply to destroy diversity jurisdiction where there is no real claim against the defendant. *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999). The doctrine allows a court to disregard the citizenship of any fraudulently joined defendant when determining whether complete diversity exists, ultimately providing the court with jurisdiction over the removed case. *Schur,* 577 F.3d at 763. If the fraudulent joinder doctrine applies, the court will dismiss any non-diverse fraudulently joined defendant from the suit. *Id.*

A defendant is fraudulently joined when: (1) "there is no possibility that a plaintiff can state a cause of action against [the] nondiverse defendant . . . in state court"; or (2) "where there has been outright fraud in plaintiff's pleading of the jurisdictional facts." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). A defendant seeking removal based on alleged fraudulent joinder has a "heavy burden" in proving that joinder was fraudulent. *Schur,* 577 F.3d at 764. Here, the defendant has alleged that both the plaintiff's claim against the in-state defendant has no chance of success and that the plaintiff committed "outright fraud" in joining Bedford in this litigation. The court will examine each of the defendant's arguments.

**1. No Chance of Success Argument**

First, Houston Casualty argues that Marks has no chance of success against Bedford with his Wis. Stat. § 618.44 claim, the only claim that the plaintiff argues creates liability for Bedford. Without deciding the merits of the case, the court must evaluate the plaintiff's claim using an inquiry akin to that used on a motion brought under Fed. R. Civ. P. 12(b)(6), where the court looks initially at the allegations of the complaint to determine whether there is "any reasonable possibility" that the plaintiff could prevail against the non-diverse defendant. *Schur,* 577 F.3d at 764. The process, however, is even more deferential to the plaintiff than a Rule 12(b)(6) motion, as the court must resolve all issues of "fact and law"[2] in favor of the plaintiff.

---

[2] In resolving an issue of "law" in favor of the plaintiff, the court must "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).

-5-

*Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) (citing *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981)). Therefore, the court turns to Wisconsin law to determine whether the plaintiff has any reasonable possibility of success in its claim against Bedford.

In Wisconsin, an insurance policy entered into in violation of state insurance laws "is unenforceable by, but enforceable against, the insurer."[3] Wis. Stat. § 618.44. In addition, the statute states that "if the insurer does not pay a claim or loss payable under the contract, any person who assisted in the procurement of the contract is liable to the insured for the full amount of the claim or loss," provided that that person "knew or should have known the contract was illegal." *Id.* Therefore, in order to hold Bedford liable for the full amount of Marks' claim under § 618.44: (1) the underlying insurance policy must have been entered into in violation of state insurance laws; (2) Bedford must have assisted in the procurement of the illegal insurance contract; (3) Bedford must have "known or should have known" that the underlying policy was illegal; and (4) the claim or loss at issue must be "payable" under the contract. Houston Casualty contends that the plaintiff's claim against Bedford fails on the first and fourth prongs required to support a claim under § 618.44.

---

[3] This statute somewhat modifies the common law rule that courts viewing an illegal contract should leave the parties to that contract as they are found. See *Ehrlich v. City of Racine*, 26 Wis.2d 352, 360 (1965).

-6-

Case 2:09-cv-01159-JPS    Filed 03/22/10    Page 6 of 13    Document 14

With regard to the policy's illegality, Marks argues that the contract violated Wis. Stat. § 618.41(9), which provides, in relevant part, that every "surplus lines"[4] insurance policy must have "stamped or affixed upon it" the following:

> This insurance contract is with an insurer which has not obtained a certificate of authority to transact a regular insurance business in the state of Wisconsin, and is issued and delivered as a surplus line coverage pursuant to s. 618.41 of the Wisconsin Statutes. Section 618.43(1), Wisconsin Statutes, requires payment by the policyholder of 3% tax on gross premium.

The plaintiff contends in his complaint that the insurance policy was illegal because "it does not contain a verbatim restatement of the requisite Wis. Stat. § 618.41(9) statutorily mandated language." Houston Casualty concedes that the statement contained in the policy is not a "verbatim restatement" of the mandated language. The language in the agreement[5] replaces a few words, most notably misquoting the number of the statute that authorizes taxation of insurance written by unauthorized insurers. Houston Casualty instead argues that "strict compliance" with the terms of the statute is not required and that the policy must merely substantially comply with Wis. Stat. § 618.41. This argument has been foreclosed

---

[4] Both parties concede that the policy in question was a "surplus lines" insurance policy.

[5] The agreement states in relevant part:

> This insurance contract is with an insurer *that* has not obtained a certificate of authority to transact a regular insurance business in the state of Wisconsin, and is issued and delivered as a surplus line coverage pursuant to *section* 618.41 of the Wisconsin Statutes. Section *618.41(1)*, Wisconsin Statutes, requires payment by the policyholder of 3% (*one-half of 1% if the coverage is Ocean Marine*) tax on gross premium.

The portion in italics highlights where the policy language departs from the language prescribed in the statute.

-7-

Case 2:09-cv-01159-JPS   Filed 03/22/10   Page 7 of 13   Document 14

by the plain language of the Wisconsin Court of Appeals, which held in *Combined Investigative Services* that the "unequivocally mandatory language" of Wis. Stat. § 618.41(9) means that "substantial compliance" with the statute in question "cannot suffice." *Combined Investigative Services, Inc.,* 165 Wis. 2d at 274. None of the cases cited by the defendant come close to questioning the *Combined Investigative Services* court's interpretation of § 618.41(9), as they are wholly inapplicable and in the context of interpreting the notice provisions of the Wisconsin statutes for municipal zoning regulations[6] or notifying parties of a claims against government entities.[7]

Moreover, Marks also argues that the statutory language was not "stamped" or "affixed" to the policy in violation of Wis. Stat. § 618.41(9), as the statement was "buried within the policy papers in a surplus lines endorsement." (Pl's Reply Br. 8). There is no definitive case law defining what the terms "stamped" or "affixed" mean within the context of Wis. Stat. § 618.41(9). Given that, the court must "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff," *B., Inc.*, 663 F.2d at 549, and find that placing the statutory language in the middle of the insurance policy could violate the provisions of Wis. Stat. § 618.41(9). Ultimately, the court concludes, at the very least, that there is a "reasonable

---

[6] *Weber v. Town of Saukville,* 209 Wis. 2d 214, 233-34 (1997).

[7] *Thorp v. Town of Lebanon,* 2000 WI 60, ¶ 28 n.10 (2000).

possibility" that the insurance policy was entered into in violation of state insurance laws.

In the alternative, Houston Casualty argues that the "plain meaning" of Wis. Stat. § 618.44 makes Bedford's liability conditional on the insurer not paying a claim that is payable under the contract, which Houston Casualty asserts eradicates the possibility that Marks could have a claim against Bedford. This argument is a non-starter, however. Simply because Bedford's liability is conditioned on certain events occurring does not mean a "reasonable possibility" of Bedford being found liable under Wis. Stat. § 618.44 is lacking in this case. The language of the insurance policy and its subsequent endorsements makes it, at the very least, possible that a court could interpret the insurance policy as requiring Houston Casualty to defend and indemnify Marks for his current lawsuits.[8] Houston Casualty now refuses to pay Marks, making it reasonably possible that Bedford, as a party who assisted the procurement of the contract, could be found liable for a claim or loss payable under the contract.

### 2. Outright Fraud Argument

Lastly, Houston Casualty argues that Marks has committed outright fraud by "inventing . . . meritless claims" against Bedford in order to "deprive Houston

---

[8] Houston Casualty contends that the insurance policy excludes "liability arising out of the Insured's services and or capacity as . . . an officer, director, . . . or employee of a business not named in the Declarations." Marks is being sued for a position he held at Titan Global Holdings, a position he held as a result of his services as the trustee of the Irrevocable Children's Trust, the position named in the declarations for Marks' insurance policy. The court does not state that Houston Casualty *is* required to indemnify or defend Marks; rather the court is merely saying that there is a reasonably possibility that a court could find that Houston Casualty is liable, allowing for Bedford's liability.

-9-

Case 2:09-cv-01159-JPS   Filed 03/22/10   Page 9 of 13   Document 14

Casualty of its constitutional and statutory right to a federal forum."[9] (Def's Br. 14). Outright fraud is rarely used as an argument against a motion to remand; the "more typical ground is that a plaintiff brought a claim against a nondiverse defendant that simply has no chance of success, whatever the plaintiff's motives." *Schur,* 577 F.3d at 763 n.9. The standard for finding "outright fraud" propelled the joining of a party to the complaint is quite high; "it is not enough to assert that there was a fraudulent joinder of defendants but there must be a statement of facts rightly engendering that conclusion." *Chicago, R. I. & P. R. Co. v. Whiteaker*, 239 U.S. 421, 425 (1915). The defendant opposing remand must make a "showing" that "compels the conclusion that joinder is without right and made in bad faith." *Id.; see also Willard v. Chicago, B. & Q. R. Co.*, 165 F. 181, 183 (7th Cir. 1908) (requiring "unmistakable proof of bad faith" in order to find fraudulent joinder). "[O]nly uncontroverted evidence showing unmistakably that a diversity-defeating defendant has absolutely no connection with the events giving rise to a case will establish fraudulent joinder." *Hill v. Olin Corp.*, No. 07-CV-0054, 2007 U.S. Dist. LEXIS 34955, at *24 (S.D. Ill. May 14, 2007) (citing to *Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 654-55 (7th Cir. 1992)).

In this case, Houston Casualty proffers two reasons to support its claim that Marks has acted in bad faith in joining Bedford to his suit. First, the defendant

---

[9] The court does not endorse the defendant's assertion of its constitutional rights. The defendant's attorneys know, or should know, that the Constitution provides no "right" to a federal forum, but rather sets the outer boundaries of the judicial power. U.S. Const. Art. III, § 2.

-10-

argues that the manner and timing of plaintiff's filings – first filing a suit against Houston Casualty, withdrawing that suit once it was removed to federal court, and filing another suit, adding Bedford as a defendant – evinces bad faith. However, Marks filed his second suit after Houston Casualty opted to outright reject the plaintiff's claim, making it reasonable that Marks would add another defendant to the suit in case Houston Casualty continued to refuse to indemnify the plaintiff. More importantly, the court has already noted that there was at least a reasonable possibility that Marks could succeed on his claim against Bedford, making it in his strategic interests to join Bedford to the suit. Bedford has a connection with the events giving rise to a case, meaning no fraudulent joinder has occurred here. *Hill,* 2007 U.S. Dist. LEXIS 34955, at *24. Second, the defendant argues that the plaintiff's "brazen, adamant, and unapologetic expressions" of his preference for a state court forum indicate his bad faith. However, Marks' voiced interest in having the case proceed in state court, an interest that should surprise no one given the motion that the plaintiff filed, is insufficient to demonstrate "unmistakable proof of bad faith." *Willard,* 165 F. at 183. While the circumstances that bring this case before the court may raise questions, the defendant has not shouldered the admittedly heavy burden of proving fraudulent joinder based on outright fraud.

### 3. Costs

Plaintiff has asked, pursuant to 28 U.S.C. § 1447(c), that the court award Marks attorney fees incurred as a result of the remand. The standard for awarding

-11-

fees under § 1447(c) is whether the "removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). A defendant has objectively reasonable basis for removal if "clearly established law" did not foreclose a defendant's basis for removal. *Wolf v. Kennelly*, 574 F.3d 406, 412 (7th Cir. 2009). As a result, this court must look at the clearly established law relevant to defendants' reasons for removal in determining whether there was an objectively reasonable basis for removal. *Id.*

Here, an award of attorney fees is inappropriate, as the defendant's attempt at removal was not foreclosed by clearly established law. In this case, Houston Casualty removed the case based on the fraudulent joinder doctrine, contending that: (1) Marks did not have a viable claim against Bedford for its role in assisting the procurement of an illegal insurance contract under Wis. Stat. § 618.44; and (2) Marks joined Bedford in bad faith. Marks argued that the contract was illegal under § 618.41. Very few courts have extrapolated, let alone clearly established, the relevant language in the statutes in questions, Wis. Stat. §§ 618.41 and 618.44. While Marks has a "reasonable possibility" of succeeding on his Wis. Stat. § 618.44 claim, it is not "clearly established" that he will succeed. In addition, the somewhat suspicious nature of Marks' voluntary dismissal of the first federal case and the immediate joining of a Wisconsin resident to his state case makes its plausible that the joining of Bedford was done in bad faith. At the very least, the law has not been

clearly established that the actions taken by Marks were done in good faith. In sum, the defendant's removal was not foreclosed by clearly established law.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to remand this action back to the Milwaukee County Circuit Court pursuant to 28 U.S.C. § 1447(c) (Docket #5) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that plaintiff's request for attorney's fees and costs be and the same is hereby **DENIED**.

The clerk of the court is directed to take all necessary steps to effectuate this remand.

Dated at Milwaukee, Wisconsin, this 22nd day of March, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge